Losing-, J.,
delivered the opinion of the court:
The hull and its contents were seized in October, 1861, and in April, 1862, the petitioner submitted his case to a commission appointed to investigate claims against the War Department, sitting at Cairo, and with his claim he submitted to the commission a detailed specification of his losses, under oath, with two compurgators, under oath, to his credibility. And in that specification he valued the hull, machinery, and materials seized at $8,168.65. He now claims for the hull, machinery, and materials seized, in a specification annexed to his petition, and therefore under oath, $22,043.65.
To account for this discrepancy, it was said that at the time of presenting to the commission the first specification he had not time nor means-forprocuring witnesses, or ascertaining and. *242 proving bis items of loss. But from October 19, 1861, when the hull was seized, to April 3, 1862, which is the date of his oath to his first specification, was six months, and that would seem time enough to'procure the information and evidence he needed at the locality of the transaction. And then the transaction was recent, and the memory of it fresh, and details and witnesses were more attainable then than ten years afterward.
Besides, the record shows that two of the most important witnesses now produced, at his request, examined and estimated upon and gave him their estimates of the hull audits contents in the fall of 1861, so that he had their estimates when he submitted his first specification to the commission, in April, 1862. And the estimates of those two witnesses as now presented are double in amount to the specification presented by the petitioner to the commission.
And the difference between his specification submitted to the commission, and that annexed to his petition here, is not made solely or chiefly by additional items subsequently ascertained, for the petitioner charges first a round sum for an entire thing, and then charges for the separate parts of the same thing. Thus, in his first specification, he specified the parts of three engines, which he had on board, and charged for each item separately. In his present specification he charges for parts of three engines, $6,000 ,• then he specifies the parts he specified before, and charges for each part separately more than he did before. So he charged for the hull in his first specification, :$5,420; he now charges for the hull $10,500, and then he •charges separately for an iron stem-band, for rudder-irons, and a capstan, which were as much constituent parts of the vessel when she was seized as her keel or timbers.
And the higher rate of charging cannot be referred to the increased cost of labor and materials, because that is the subject of a specific charge, as follows: “ To materials not remembered, and for the increased value of the. materials at the time .the boat was taken, above that specified in the account, as well as their additional value in the almost finished boat, $9,000.”
Before the commission the petitioner’s whole claim was $8,168.65. Now his whole claim is $32,068.65, for besides the charges mentioned he claims, for his services in superintending the building of his boat, $900; but this, with the materials and labor, is an expense of construction, and is included in the *243 valuation of tbe boat. Then he charges, for bringing the hull from Wabash Biver to Caledonia, $125, which is included in her valuation at Caledonia, where she was seized.
The record shows that the boat was built on the Wabash Biver, with timber there sawed by the petitioner in a mill run by him for the purpose, and the machinery was taken from a very old boat called the Eaves, which, after she was worn out and unseaworthy, the petitioner bought to get her machinery for this hull. The evidence shows that the machinery was originally good, but it was old and second-hand and had worn out one boat.
But notwithstanding the manner in which the claim is stated, the petitioner is entitled to an indemnity for his property taken for public use, and the measure of that indemnity is his loss when it was taken in 1861, for then, certainly, .and until the statute of 1864, if not ever since 1861, he had his remedy here; and it is not the fault of the United States that he applied to a commission which had not jurisdiction of his claim, or that he has otherwise delayed the prosecution of his remedy. The amount we have awarded him is beyond his own estimate of his loss when it occurred, and is all that the evidence satisfies us is due.